ROBERT WISNIEWSKI, ESQ.
ROBERT WISNIEWSKI P.C.
Attorneys for Plaintiffs
17 State Street, Suite 820
New York, NY 10004
Tel. (212) 267-2101
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
JUAN FRANCISCO GOMEZ, SADE PICHARDO,
THOMAS COSTA, and AMBER BIGGS,

                              Plaintiffs,

            -against-                           **Docket No.:**
                                                       **JURY TRIAL DEMANDED**

SALSA CON FUEGO MANAGEMENT LLC
d/b/a SALSA CON FUEGO, ROBERT GUZMAN, and
JOHN TORRES,

                              Defendants.
-----------------------------------------------------------------X

## COMPLAINT

Plaintiffs Juan Francisco Gomez ("Gomez"), Sade Pichardo ("Pichardo"), Thomas Costa ("Costa"), and Amber Biggs ("Biggs") (Gomez, Pichardo, Costa and Biggs are, collectively, "Plaintiffs"), by and through their attorneys, Robert Wisniewski P.C., as and for their Complaint against Defendants Salsa Con Fuego Management LLC ("Corporate Defendant"), Robert Guzman ("Guzman"), and John Torres ("Torres") (Guzman and Torres are, collectively, "Individual Defendants") (Corporate Defendant and Individual Defendants are, collectively, "Defendants"), states as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action against the Corporate Defendant for discrimination, hostile work environment, and termination based on race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

2. Plaintiffs also bring this action against all Defendants for discrimination, hostile work environment, and termination based on race in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

3. Costa also asserts claims against the Corporate Defendant under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq., ("ADEA") for discrimination based on age.

4. Plaintiffs also assert claims against all Defendants under the New York Executive Law § 296 ("NYSHRL") and the New York City Charter and Administrative Code § 8-107 ("NYCHRL") for discrimination, hostile work environment, and termination based on race, color, and national origin. Additionally, Costa brings a claim against Defendants for discrimination, hostile work environment, and termination based on age in violation of the NYSHRL and NYCHRL.

5. Plaintiffs Gomez and Pichardo also assert claims against Defendants under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.) ("FLSA") for retaliation, including but not limited to constructive termination of their employment.

6. Gomez and Pichardo also assert claims against Defendants under Article 7, and § 215 of the New York Labor Law ("NYLL"), for retaliation, including but not limited to constructive termination of their employment.

## PARTIES, JURISDICTION AND VENUE

7. Gomez, a former employee of the Corporate Defendant, is Hispanic male of Dominican national origin. At all relevant times, Gomez was and is a resident of the State of New York, Bronx County.

8. Pichardo, a former employee of the Corporate Defendant, is a Hispanic female of

Dominican national origin. At all relevant times, Pichardo was and is a resident of the State of New York, Westchester County.

9. Costa, a former employee of the Corporate Defendant, is a white male of Italian national origin. At all relevant times, Costa was and is a resident of the State of New York, Queens County.

10. Biggs, a former employee of the Corporate Defendant, is a Hispanic female of Dominican and Italian national origin. At all relevant times, Biggs was and is a resident of the State of New York, Bronx County.

11. Corporate Defendant, at all relevant times, is and has been a domestic business corporation within, and organized pursuant to the laws of, the State of New York with its principal place of business located at 2297 Cedar Ave, Bronx, NY 10468.

12. At all relevant times, the Corporate Defendant employed fifteen (15) or more employees, and thus, was Plaintiffs' "employer" within the meaning of that term under Title VII, the NYSHRL, and NYCHRL.

13. At all relevant times, Guzman was and is a resident of the State of New York. He is a Hispanic male of Dominican descent. He had the authority to set the terms and conditions of Plaintiffs' employment.

14. At all relevant times, Torres was and is a resident of the State of New York. He is a Hispanic male of Puerto Rico national origin. He had the authority to set the terms and conditions of Plaintiffs' employment, and played a direct role in all or some of the discriminatory acts as set forth below.

15. Upon information and belief, Guzman and Torres are the owners, members, officers, and/or managers of the Corporate Defendant, and as the managing-members

and/or managers are individually responsible for unpaid wages under the New York Limited Liability Company Law.

16. Guzman, as a managing member of the Corporate Defendant, had the authority to set the terms and conditions of Plaintiffs' employment, which included making personnel decisions beyond mere execution. Guzman's role extended to hiring, disciplining, and paying employees, demonstrating his control over the means and manner of Plaintiffs' performance.

17. At all relevant times, Guzman and Torres aided and abetted, ratified and condoned, and/or played a direct role in:

   a. Subjecting Plaintiffs to inferior and disparate treatment on the basis of Plaintiffs' race, color, national origin, and age;

   b. Maintaining and/or condoning a hostile work environment on the basis of Plaintiffs' race color, national origin, and age which affected the terms of Plaintiffs' employment;

   c. Terminating Plaintiffs' employment with the Corporate Defendant based on Plaintiffs' race, color, national origin, and age.

18. This Court has personal jurisdiction over the Corporate Defendant because it is domiciled in the State of New York and maintains its principal place of business within the state.

19. This Court has personal jurisdiction over Guzman because he is a citizen of, and resides in, the State of New York.

20. This Court has personal jurisdiction over Torres because he is a citizen of, and resides in, the State of New York.

21. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under Title VII, Section 1981, and the FLSA. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367, because those claims are intimately related to Plaintiffs' federal claims and form part of the same case or controversy.

22. Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of Defendants employ, handle, and sell goods that have been moved in or produced for interstate commerce (food, utensils, chairs, tables, and other items), and Defendants are thus employers subject to the jurisdiction of the FLSA.

23. This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. § 1391(b) because substantial events giving rise to Plaintiffs' claims occurred in this district, and Defendants reside herein.

## PREREQUISITES

24. All Plaintiffs filed a charge of discrimination against Defendants with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue (the "Right to Sue Letter") concerning the charge.

## JURY DEMAND

25. Plaintiffs demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

26. Biggs was hired by Defendant in June 2023 to work as a bartender at Salsa Con Fuego, a restaurant located at 2297 Cedar Ave, Bronx, NY, 10468.

27. Costa has worked as a manager at Salsa Con Fuego for about 10 years.

28. Gomez worked as a bar preparer at Salsa Con Fuego for about 11 years.

29. Pichardo was hired by Defendant in or about April 2024 as a bartender at Salsa Con Fuego.

30. In or about September 2024, Robert Guzman became Salsa Con Fuego's new owner and hired John Torres as the new general manager.

31. Torres, a dark-skinned Puerto Rican, openly expressed his disdain for Dominicans.

32. Torres forbade his Dominican employees from taking a lunch break, stating that they "had no right to eat", while allowing Puerto Rican and Peruvian employees to take a lunch break.

33. Torres repeatedly asked Biggs, a light-skinned Dominican woman, what her nationality was with the intent to mock her nationality and lighter skin color to upset her.

34. Another employee, Larissa Pinella Angeles, who had darker skin than Biggs, regularly mocked Biggs' appearance and skin color behind her back and to her face. Though Biggs reported this behavior to Torres, he did not discipline Angeles.

35. On March 5, 2025, Angeles approached Biggs, pushed her, and told her that she should not work at Salsa Con Fuego because she was "a white girl."

36. Later that day, Biggs reported Angeles' physically and verbally aggressive behavior to Torres, who then sent Biggs home, telling her that she would be contacted with a date to return to work. Biggs was never contacted, and understood that she had been terminated in retaliation for her protected complaint.

37. Guzman, who was aware of Angeles' and Torres' frequent discriminatory behavior, did not address it.

38. Torres' known bias against Dominicans was further manifested in his treatment of Gomez and Pichardo, Dominican employees.

39. On multiple occasions, Gomez and Pichardo observed Torres stating "I hate Dominicans" and "Maldito Dominicano" or "Damn Dominican."

40. Like Biggs and other Dominican employees, Torres forbade Gomez and Pichardo from taking a lunch break, while Puerto Rican and Peruvian employees were permitted to take a lunch break.

41. Torres witnessed Barbara Michelle, a dark-skinned Puerto Rican waitress, repeatedly threatened to call the police on Gomez for no other reason but to intimidate him, but took no disciplinary action against her.

42. Throughout his term as general manager, Torres fired approximately seven or eight employees who were Dominican or had lighter skin than Torres.

43. Beginning on or about December 2024, in addition to the racially-charged abuse directed at Pichardo, Gomez, and other Dominican or lighter-skinned employees, Torres reduced Pichardo's hours to only one day of work per week and removed Gomez completely from the schedule.

44. Pichardo and Gomez made Torres aware that they objected to the reduction of hours and had routinely requested that they be allowed to work more hours. Torres continuously denied their requests.

45. Upon information and belief, in retaliation for Pichardo and Gomez's complaints about their reduction of hours, Defendants intended to continue reducing their work schedules.

46. Upon information and belief, Defendants were aware that it is unlawful to retaliate against an employee for making a complaint about the reduction of hours under the FLSA and NYLL.

47. On December 13, 2024, Pichardo was terminated from Salsa Con Fuego. It was obvious to Pichardo that like the other employees who had been terminated, his termination was due to being Dominican.

48. By January 2025, after having been removed from the schedule for several weeks, Gomez understood that he had been terminated from Salsa Con Fuego. It was obvious to Gomez that like the other employees who had been terminated, his termination was due to being Dominican.

49. Defendants' disparate treatment and termination of Biggs, Pichardo and Gomez due to their race were intentional and in violation of Title VII, Section 1981, NYSHRL and NYCHRL.

50. Torres' discriminatory practices as general manager continue to impact current employees' work environment, including Plaintiff Costa, a 60-year-old man who had been working as a manager at Salsa Con Fuego for a decade.

51. Torres reduced Costa's scheduled hours from four days per week to only one day per week.

52. Despite his expertise and long-standing commitment, Costa's shifts appeared to be given to a new employee with no prior experience. While Costa was resigned to only one day of work, the new employee was scheduled for five days of work.

53. While Guzman was aware that Torres had unfairly reduced Costa's scheduled hours, he did nothing to address the issue.

54. Torres attempted to force Costa out not only by reducing his hours, but also by slandering his reputation. Torres photographed Costa while he was working and attempted to falsely portray Costa as negligent in his duties to Guzman.

55. Defendants also refused to pay disability benefits to Costa for bilateral knee surgery that kept him out of work in April of 2024.

56. Throughout their employment, Plaintiffs performed their jobs diligently and were capable of working harder and better than many of their colleagues.

57. Defendants' reason for Plaintiffs' termination were a pretext to terminate Plaintiffs owing to their age, race, color, and national origin.

58. The conduct by Defendants have been sufficiently severe, and occurred in a regular and pervasive manner, that it had a detrimental effect on, and interfered with, Plaintiff's health and well-being.

59. Guzman was fully aware or should have been aware, of Torres' discriminatory conduct, and failed to take any measures to protect Plaintiffs from discrimination and harassment.

60. In taking, or failing to take, the actions described herein, Defendants acted with malice, reckless and callous indifference to federal and state anti-discrimination laws, which they knew of or should have known of and, through their course of conduct, caused Plaintiffs to suffer emotional damages.

61. No reasonable person would have tolerated or condoned Defendants' behavior towards Plaintiffs. The harassment that Plaintiffs endured at the hands of Defendants changed the conditions of Plaintiffs' employment with Defendants.

62. Defendants' actions were so outrageous, malicious and wanton, and were perpetrated with reckless indifference to Plaintiffs' protected civil rights and must be punished and deterred through an award of significant punitive damages.

63. As a result of Defendants' unlawful discriminatory acts against Plaintiffs, Plaintiffs have suffered and will continue to suffer impairment and damage to Plaintiffs' good name and reputation, lasting embarrassment, humiliation, anguish, and other incidental and consequential damages and expenses.

64. Defendants' unlawful harassment and discriminatory acts against Plaintiffs were intentional and in violation of Title VII, Section 1981, ADEA, NYSHRL, and NYCHRL

**FIRST CLAIM FOR RELIEF**
**(Discrimination and Hostile Work Environment based on Race, Color and National Origin Under Title VII Against Corporate Defendant)**

65. Plaintiffs repeat and reallege each and every previous allegation previously set forth herein.

66. When employed by Defendants, Plaintiffs were employees within the meaning of Section 2000e(f) of Title VII.

67. Corporate Defendant was an employer within the meaning of Section 2000(e)(b) of Title VII.

68. Section 2000e-2(a) of Title VII makes in unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color…or national origin."

69. Corporate Defendant through its owners, directors, officers, managers and employees, engaged in discrimination on the basis of race sufficient to alter the terms and conditions of Plaintiffs' employment.

70. Corporate Defendant discriminated against Plaintiffs by treating them differently and less favorably based on their race by subjecting them, among other things, to discriminatory work conditions and discriminatory termination of their employment solely because of their race, color or national origin in violation of Section 2000e-2(a) of Title VII.

71. Corporate Defendant is liable for the discrimination against Plaintiffs because it was created and fostered by its owners, directors, officers, managers, and/or because the Corporate Defendants did not take adequate steps to prevent or address instances of race discrimination.

72. Corporate Defendant also fostered a hostile work environment sufficiently because of Plaintiffs' race, color or national origin that was so severe and pervasive as to alter the terms and conditions of Plaintiffs' employment and created an abusive work environment, in violation of 42 U.S.C. §2000e-2(a).

73. Corporate Defendant is also liable for the hostile work environment at the office because it was created and fostered by its owners, directors, officers or management at the Corporate Defendants' and/or because Corporate Defendant did not take adequate steps to prevent or address instances of racially motivated abuse.

74. Said discrimination occurred with malice and reckless disregard of Plaintiffs' rights.

75. As a result of Corporate Defendant's discrimination and maintaining a hostile work environment, Plaintiffs suffered and continue to suffer damages, including but not limited to lost income, lost future wages, mental anguish, pain and suffering, and reputational damage.

76. Plaintiffs are also entitled to an award of punitive damages, attorney's fees, and costs because Corporate Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Title VII.

**SECOND CLAIM FOR RELIEF**
**(Discrimination and Hostile Work Environment Under Section 1981 Against All Defendants)**

77. Plaintiffs repeat and reallege each and every previous allegation previously set forth herein.

78. Section 1981 of the Civil rights Act of 1866, provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts … as is enjoyed by white citizens …" This section thus outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, and has been interpreted to prohibit race discrimination in hiring and employment.

79. Defendants discriminated against Plaintiffs by treating them differently and less favorably than their White and darker-skinned Hispanic employees based on their race and light skin color by subjecting them, among other things, to disparate working conditions and compensation and discriminatory termination of their employment solely because of their race in violation of Section 1981.

80. Said discrimination was sufficiently severe to alter the terms and conditions of Plaintiffs' employment.

81. This discrimination was a result of intentional actions by all Defendants, deliberate indifference by all Defendants and/or the result of Defendants' maintaining a practice that has a disparate impact on its White and Dominican employees, including Biggs, Pichardo, Gomez, and Costa.

82. All Defendants are liable for the discrimination against Plaintiffs because it was created and fostered by their owners, directors, officers, managers, and/or agents and/or because all Defendants did not take adequate steps to prevent or address instances of racial discrimination.

83. As a result of the discrimination complained of herein, Plaintiffs suffered and continues to suffer damages, including but not limited to lost income, lost future wages, mental anguish, and pain and suffering and reputational damage.

84. Plaintiffs are also entitled to an award of punitive damages, attorney's fees, and costs because Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 1981.

### THIRD CLAIM FOR RELIEF
### (Discrimination and Hostile Work Environment Based on Age, Race, Color or National Origin Under NYSHRL Against All Defendants)

85. Plaintiffs repeat and reallege each and every previous allegation previously set forth herein.

86. New York Executive Law § 296 (1)(a) provides that, "It shall be an unlawful discriminatory practice "For an employer ... because of an individual's age, race, creed, color or national origin...to discriminate against such person in compensation or in terms, conditions or privileges of employment."

87. Section 296(6) provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

88. Defendants discriminated against Biggs, Pichardo, and Gomez by treating them differently and less favorably than their non-Dominican, darker-skinned employees based on their Dominican nationality and light skin color by subjecting them, among other

things, to disparate working conditions and discriminatory termination of their employment solely because of their age, race, color, and/or national origin in violation of Section 298(1) of NYSHRL.

89. Defendants engaged in discrimination and fostered a hostile work environment based on the basis of Plaintiffs' age, race, creed, color and/or national origin sufficient to deprive them of the privileges of employment.

90. Biggs, Pichardo, and Gomez suffered an adverse employment action when they were terminated from their employment at the Corporate Defendant.

91. Costa suffered an adverse employment action when his hours were significantly reduced by the Corporate Defendant.

92. All Defendants are liable for said discrimination against Plaintiffs because it was created and fostered by the Individual Defendant.

93. The discrimination of the Defendants was a result of intentional actions by all Defendants and/or deliberate indifference by all Defendants.

94. As a direct and proximate result of said discrimination, Plaintiffs suffered and continue to suffer actual damages, in various forms including without limitation lost wages, future wages, as well as mental anguish, pain, and suffering and reputational damage.

95. Plaintiffs are also entitled to an award of punitive damages, attorney's fees, and costs because Corporate Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 296.

**FOURTH CLAIM FOR RELIEF**
**(Discrimination and Hostile Work Environment Based on Age, Race, Color or National Origin Under New York City Human Rights Law Against All Defendants)**

96. Plaintiffs repeat and reallege each and every previous allegation previously set forth herein.

97. The New York Administrative Code § 8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived ... sex, race, color, or national origin... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

98. Defendants discriminated against Biggs, Pichardo, and Gomez by treating them differently and less favorably than their non-Dominican, darker-skinned employees based on their Dominican nationality and light skin color by subjecting them, among other things, to disparate working conditions and discriminatory termination of their employment solely because of their age, race, color, and/or national origin in violation of New York Administrative Code § 8-107(1).

99. Defendants discriminated against Costa by treating him differently and less favorably than their non-White, younger employees based on his age and race by subjecting him, among other things, to disparate working conditions and constructive termination of his employment solely because of his age, race, color, and/or national origin in violation of New York Administrative Code § 8-107(1).

100. Defendants also unlawfully discriminated against Plaintiffs on the basis of their sex, race, color, and/or national origin by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

101.    By virtue of the acts complained of herein, the discrimination and hostile work environment at the Corporate Defendant was sufficiently severe and pervasive to alter the terms and conditions of Plaintiffs' employment and create a subjectively and objectively abusive/discriminatory work environment.

102.    Said discrimination and hostile work environment occurred with malice and reckless disregard of Plaintiffs' rights.

103.    The New York Administrative Code § 8-107(6) provides that, "It shall be an unlawful discriminatory practice: For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

104.    Individual Defendants engaged and continue to engage in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory conduct.

105.    As a direct and proximate result of Defendants' discrimination and hostile work environment, Plaintiffs suffered and continue to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering.

106.    Plaintiffs are also entitled to an award of punitive damages, attorney's fees, and costs because Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 8-107.

**FIFTH CLAIM FOR RELIEF**
**(Discrimination Based on Age Under the ADEA by Plaintiff Costa Against Corporate Defendant)**

107.    Costa repeats and realleges each and every previous allegation previously set forth herein.

108.    Costa is a qualified individual over the age of 40.

109.　The ADEA § 623(a)(1) makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age."

110.　Corporate Defendant engaged in discrimination on the basis of Costa's age sufficient to deprive him of the privileges of employment.

111.　Costa suffered adverse employment actions when his hours were cut by the Corporate Defendant.

112.　Corporate Defendant is also liable for said discrimination against Costa because it was created and fostered by its owners, officers, directors and management.

113.　The discrimination of Costa was a result of intentional actions or deliberate indifference by the Corporate Defendant.

114.　As a direct and proximate result of said discrimination, Costa suffered and continues to suffer actual damages in various forms including without limitation past wages, future wages, as well as mental anguish, pain and suffering, and reputational damage.

115.　Costa is also entitled to an award of liquidated damages, punitive damages, attorney's fees, and costs because Corporate Defendant's unlawful and discriminatory actions constitute malicious, willful and wanton violations of the ADEA.

### SIXTH CLAIM FOR RELIEF
**(FLSA Retaliation by Plaintiffs Pichardo and Gomez Against all Defendants)**

116.　Plaintiffs repeat and reallege each and every previous allegation previously set forth.

117.　Pichardo and Gomez are persons covered by, and/or intended to benefit from, the provisions of the FLSA with respect to their work for the Defendants.

118. Pichardo and Gomez bring this claim for relief pursuant to the applicable provisions of the FLSA, 29 U.S.C. §215, which makes it "unlawful for any person…(3) to discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

119. Pichardo and Gomez complained to Defendants about the reduction of their hours. Defendants refused to reverse their decision to reverse their hours, and consequently, constructively terminated their employment.

120. Accordingly, Pichardo and Gomez seeks a judgment for lost wages, along with an award of liquidated damages, interest, attorneys' fees, and costs, as provided by the FLSA.

**SEVENTH CLAIM FOR RELIEF**
**(NYLL Retaliation by Plaintiffs Pichardo and Gomez Against all Defendants)**

121. Plaintiffs repeat and reallege each and every previous allegation previously set forth.

122. Pichardo and Gomez are persons covered by, and/or intended to benefit from, the provisions of the New York Labor Law with respect to their work for the Defendants.

123. Pichardo and Gomez bring this claim for relief pursuant to the applicable provisions of the NYLL, Article 7, Labor Law § 215, which makes it unlawful for any "employer…[to] discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint…"

124. Pichardo and Gomez complained to the Defendants about the reduction of their hours. Defendants refused to reverse their decision to reduce their hours, and consequently, constructively terminated their employment.

125. Accordingly, Pichardo and Gomez seek a judgment for lost wages, along with an award of liquidated damages, interest, attorneys' fees, and costs, as provided by the NYLL.

## PRAYER FOR RELIEF

**WHEREFORE,** it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs demand a trial by jury and judgment against all Defendants as follows:

A.   A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B.   An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiffs for all monetary and/or economic damages;

C.   An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

D.   An award of damages to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

E.   An award of liquidated damages under the ADEA and FLSA and NYLL;

F.   An award of punitive damages;

      G.      An award of pre-judgment interest; and

      H.      An award of costs and disbursements that Plaintiff has incurred in this action, as well as Plaintiffs' attorneys' fees to the fullest extent permitted by law.

Together with such other and further relief that the Court deems just and proper.

Dated: New York, NY
July 28, 2025

                                                                 ROBERT WISNIEWSKI P.C.
                                                                 By: /s/Robert Wisniewski
                                                                  Robert Wisniewski
                                                                 Attorneys for Plaintiffs
                                                                17 State Street, Suite 820
                                                                New York, NY 10004
                                                                Tel.: (212) 267-2101
                                                                Email: rw@rwapc.com